

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION



| UNITED STATES OF AMERICA | § | **3-11CR-212-N** |
| --- | --- | --- |
| | § | |
| v. | § | No. |
| | § | U.S. DISTRICT COURT |
| VATHANY TENG (01) | § | NORTHERN DISTRICT OF TEXAS |
| LINA MA (02) | § | ECF **FILED** |
| JERRY GOH (03) | § | |

JUL 19 2011

CLERK, U.S. DISTRICT COURT

By _____ Deputy

## INDICTMENT

The Grand Jury Charges:

### Count One
### Conspiracy to Commit Bank Fraud
### (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1344))

At all times material to the indictment:

**Introduction**

1. Prosper Bank (Prosper) was a financial institution with its principal place of business located in Prosper, Texas. The accounts of Prosper were insured by Federal Deposit Insurance Corporation (FDIC).

2. United Central Bank (UCB) was a financial institution located in Garland, Texas. The accounts of UCB were insured by FDIC.

3. The U.S. Small Business Administration (SBA) was established as an independent agency of the federal government to aid, counsel, assist and protect the interests of small business concerns, to preserve free competitive enterprise and to

maintain and strengthen the overall economy of our nation.

4. Chicago Title Insurance Company (Chicago Title) was a corporation which offered title insurance and escrow services for the real estate transactions.

5. Fidelity National Title Insurance Company was a corporation which offered title insurance and escrow services for the real estate transactions.

**Defendants and Related Entities**

6. **Vathany Teng** was involved with the following real estate entities related to charges alleged in this indictment: Fortune Consulting and Management Firm, LLC (Fortune) and Destiny Property, LLC (Destiny).

7. **Lina Ma** was involved with the following estate entities related to charges alleged in this indictment: TUMU Universal Corporation (TUMU) and Earthen Wood, LLC (Earthen Wood).

8. **Jerry Goh** acted as an escrow officer with Chicago Title on the Prosper Bank loan, and as a broker on the UCB loans.

**The Conspiracy and its Objects**

9. Beginning in or about August of 2007, the exact date being unknown to the Grand Jury, and continuing thereafter until at least in or about April of 2008, in the Dallas Division of the Northern District of Texas and elsewhere, defendants **Vathany Teng, Lina Ma**, and **Jerry Goh** did unlawfully, knowingly, and willfully conspire and agree together, with each other, and with persons both known and unknown to the Grand Jury, to commit the following offense against the United States: the offense of bank fraud in

violation of 18 U.S.C. § 1344.

**Manner and Means of the Conspiracy**

10. It was part of the conspiracy that:

a. one or more conspirators deceived Prosper and UCB when they made both false representations and deliberate omissions of material information when they submitted fraudulent loan applications to these banks;

b. one or more conspirators deceived both Prosper and UCB by falsely representing to both banks that conspirator/borrower **Lina Ma** was the true source of loan down payments on all three fraudulent loans involving borrower **Ma**;

c. one or more conspirators deceived both Prosper and UCB by causing Line 303 (Cash from Borrower) of the HUD-1 Settlement Statement on all three loans to falsely represent to the lender that borrower **Ma** was the actual source of the cash listed in Line 303;

d. one or more conspirators deceived Prosper and UCB because conspirators knew that these financial institutions would likely not agree to approve these loans if conspirators fully disclosed all material and relevant information;

e. one or more conspirators deceived Prosper and UCB in order to fraudulently induce these banks to make large SBA guaranteed commercial loans to conspirator Lina Ma; and

f. the conspiracy involved one fraudulent loan from Prosper Bank and two

fraudulent loans from United Central Bank over a period from at least in or about August of 2007 through in or about April of 2008, which resulted in the total funding of approximately $3,168,071 in fraudulent loans.

**Overview of Conspiracy**

11.   Prosper Bank loan - $1.835 million to purchase Laundromat (500 Broadway Commons, Garland, Texas)

a.  On or about September 30, 2007, **Ma** signed and submitted a fraudulent application for a SBA guaranteed loan in the amount of $1,853,571 from Prosper Bank for Wash & Dry Laundry Mat located 500 Broadway Common, Garland, Texas.  In this application, **Ma** fraudulently inflated her listed assets.

b.  On or about October 4, 2007, conspirators caused the SBA to issue a loan authorization approval letter to Prosper Bank for the above-referenced loan.

c.  On or about October 5, 2007, **Ma** and **Teng** created a fictitious "gift letter" which falsely represented to Prosper Bank that **Ma** had the substantial funds needed for the equity injection (down payment).  All conspirators knew that Ma lacked funds to use for the down payment for the Prosper Bank loan.  All conspirators also knew that this phony gift letter was created for the purpose of falsely representing to Prosper Bank that **Ma** would receive $500,000 from her brother in China.  The $500,000 fraudulent gift letter was used to trick Prosper Bank into believing that **Ma** would have the funds needed for her equity injection (down payment) for the requested $1.8 million Prosper Bank loan.

d. Sometime in the summer of 2007, **Teng** and **Ma** first discussed the pending Prosper Bank loan with defendant **Jerry Goh**. **Teng** told **Goh** that **Ma** did not have the funds required for the equity injection (down payment) that Prosper Bank required for the loan to be approved. **Goh** assured **Teng** that **Goh** had done this sort of thing before, and **Goh** knew what to do to get **Ma** approved for one or more bank loans.

e. Sometime in the summer of 2007, **Goh** informed **Teng** that she must pay **Goh** $30,000 as payment for **Goh's** help in getting **Ma** approved for both the Prosper Bank and United Central Bank loans.

f. On or about December 21, 2007, escrow officer **Goh**, seller **Teng** and buyer **Ma** all signed a fraudulent HUD-1 Settlement Statement used for the closing of the $1.8 million Prosper Bank loan. **Goh** falsely certified this HUD-1, knowing that Line 303 of the HUD-1 falsely represented that **Ma** was the true source of the $431,229 (Cash Paid by Borrower).

g. When **Goh** signed this HUD-1, **Goh** knew that Prosper Bank agreed to fund this loan only on the condition that borrower **Ma** produce the down payment funds prior to the loan closing. **Goh** defrauded Prosper Bank when he concealed from Prosper Bank that **Goh** fraudulently released $498,729 from the escrow account to fund **Ma's** needed loan down payment. Knowing that borrower **Ma** lacked the needed down payment funds, **Goh** devised a scheme to defraud which concealed from Prosper Bank that **Goh** helped **Teng** use her seller loan proceeds

to fund **Ma's** equity injection (down payment).

h. On or about December 24, 2007, without the knowledge and consent of Prosper Bank, escrow officer **Goh** fraudulently released $498,729 of Prosper Bank loan proceeds from **Goh's** escrow account. Goh caused these funds to be wired to **Teng's** bank account. **Goh** also instructed **Teng** to use $431,229 of these funds to purchase a cashier's check listing **Ma** as the "remitter" to falsely represent to Prosper Bank that **Ma** purchased this cashier's check with **Ma's** own funds.

i. On or about December 24, 2007, without the knowledge and consent of Prosper Bank, escrow officer **Goh** told **Teng** to call **Ma** and tell her to pick up the cashier's check from **Teng**. **Goh** also caused **Ma** to deposit the cashier's check into **Goh's** escrow account as **Ma's** equity injection (down payment).

12. Two UCB loans - total $1.3 million

a. On or about November 2, 2007, defendant **Vathany Teng** caused defendant **Lina Ma** to complete and sign the UCB loan application containing fraudulent representations, including inflated assets.

b. On or about November 2, 2007, defendants **Teng** and **Ma** provided the signed application to defendant **Goh** for review. This loan application covered what eventually became two UCB loans. The first loan was for the purchase of 1.39 acres of improved land at 500 Broadway Commons, in Garland, Texas. The second loan was for the purchase of 31 lots in a town home subdivision in Irving, Texas. Goh acted as the loan broker on the initial loan application.

c. In or about February of 2008, **Goh** devised a plan to fraudulently generate funds for **Ma** to use for her UCB loan down payments and thus enable **Ma** to falsely represent to UCB that **Ma** had sufficient down payment funds for the UCB loans.

d. In or about February of 2008, **Goh** told defendants **Teng** and **Ma** to falsely represent to UCB that **Ma's** past unrelated investment payments to **Teng** were actually "earnest" payments intended to be used as down payments for the requested UCB loans.

e. In or about February / March 2008, **Goh** told defendants **Teng** and **Ma** that **Goh** would solicit investor funds to be later used by **Ma** for additional down payment funds needed by **Ma** for her two UCB loans.

f. In or about February / March 2008, **Goh** arranged for several investors to purchase cashiers checks or wire funds to later be used by **Ma** as down payment funds for her UCB loans. Defendant **Goh** instructed each investor to list defendant **Lina Ma** as the remitter on the face of the cashier's check, thus falsely representing to UCB that **Ma** was the source of the funds used to purchase each cashiers check. **Goh** assisted **Teng** and **Ma** to solicit over $449,000 of investor funds later used by **Ma** for the down payment funds. **Goh, Teng** and **Ma** defrauded and deceived UCB by concealing from UCB that these investor funds were actually short term loans by the investors to borrower **Ma.** In other words, conspirators concealed from UCB that **Ma** had to borrow the funds needed for her

loan down payments.

g. On or about March 11, 2008, UCB submitted a memorandum to the UCB Loan Committee for approval to fund defendant Ma's two UCB loans totaling $1,332,500. **Goh, Teng** and **Ma** caused this loan memorandum to falsely represent to UCB that borrower **Ma** was the actual source of approximately $700,000 needed by **Ma** for total loan down payments for both UCB loans.

h. On or about March 12, 2008, defendants **Lina Ma** and **Vathany Teng**, aided and abetted by defendant **Jerry Goh**, signed a false and fraudulent HUD-1 Settlement Statement which was used at the closing of a $357,500 UCB loan for the purchase of 1.39 acres of improved land at 500 Broadway Commons, Garland, Texas. Defendants caused Line 303 of the HUD-1 to falsely represent that **Ma** was the source of the $150,406 (Cash Paid by Borrower).

i. On or about March 12, 2008, defendants **Lina Ma** and **Vathany Teng**, aided and abetted by defendant **Jerry Goh**, signed a false and fraudulent HUD-1 Settlement Statement used for the closing of a $975,000 UCB loan for the purchase of 31 lots in a town home subdivision, Irving, Texas. Defendants caused the Line 303 of the HUD-1 to falsely represent that **Ma** was the source of the $334,478 (Cash Paid by Borrower).

The Grand Jury hereby realleges and incorporates, by reference herein, all of the allegations set forth in Counts Two and Three of this indictment, as part of this conspiracy.

In violation of 18 U.S.C. § 1349 (18 U.S.C. § 1344).

### Count Two
### Bank Fraud, Aiding and Abetting
### (Violations of 18 U.S.C. §§ 1344 and 2)

1.      The Grand Jury hereby adopts, realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 12 of Count One of this indictment.

2.      Beginning in or about August of 2007 and continuing thereafter through in or about March of 2008, in the Dallas Division of the Northern District of Texas, and elsewhere, defendants **Vathany Teng, Lina Ma**, and **Jerry Goh**, and while acting as aiders and abetters to each other, did knowingly and intentionally devise and execute and attempt to devise and execute a scheme and artifice to defraud Prosper Bank, of Prosper, Texas, a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, and credits owned by and under the custody and control of Prosper Bank by means of false and fraudulent pretenses, representations, and promises.

**The Scheme and Artifice to Defraud Prosper Bank**

3.      It was a part of the scheme and artifice to defraud and to obtain moneys, funds, and credits of Prosper Bank by means of false and fraudulent pretenses, representations, and promises that defendants **Teng, Ma,** and **Goh**, aided and abetted by each other, engaged in fraudulent conduct to deceive and defraud Prosper Bank in order to obtain loan approval for borrower **Lina Ma.**

4.      It was a part of the scheme and artifice to defraud for **Teng, Ma**, and **Goh**, to falsely represent to Prosper Bank that borrower **Ma** had sufficient funds to make the required equity injection (down payment) on the $1.8 million loan from Prosper Bank.

5.      It was a part of the scheme and artifice to defraud for one or more conspirators to use a false and fictitious "gift letter" to falsely represent to Prosper Bank that **Ma** expected to receive a $500,000 gift from her brother in China which borrower **Lina Ma** would then use as her Prosper Bank loan down payment.

6.      It was a part of the scheme and artifice to defraud for **Goh** to demand in or about the summer of 2007 that **Teng** pay **Goh** $30,000 in return for his assistance getting fraudulent loans approved to borrower **Lina Ma.**  In March of 2008, **Teng** paid the agreed $30,000 to **Goh** as payment for his assistance to **Teng** in obtaining approval of loans from both Prosper Bank and UCB.  Thus, **Goh** clearly financially benefitted from his role in the fraudulent scheme to defraud Prosper Bank.

7.      It was a part of the scheme and artifice to defraud that escrow officer **Goh** falsely certified the HUD-1 settlement statement knowing that Line 303 of the HUD-1 settlement statement (Funds from Borrower) falsely represented that $431,229 was paid by the named borrower **Ma**, when **Goh** then knew that the actual source of these down payment funds was **Goh's** unauthorized and fraudulent early release of these funds from the escrow account which was under the control of escrow officer **Goh**.

8.      It was a part of the scheme and artifice to defraud that conspirators **Goh, Teng**, and **Ma** defrauded Prosper Bank by concealing from Prosper Bank that **Vathany**

**Teng** used the seller's loan proceeds to purchase **Teng's** down payment cashier's check, thus fraudulently and secretly using Prosper Bank loan proceeds to fund **Lina Ma's** loan down payment.

### Execution of Scheme and Artifice to Defraud

9.     On or about December 24, 2007, defendants **Vathany Teng, Lina Ma,** and **Jerry Goh**, while acting as aiders and abetters to each other, did knowingly and intentionally devise and execute and attempt to devise and execute a scheme and artifice to defraud Prosper Bank, in that on or about this date, defendant **Goh** concealed from Prosper Bank that **Goh** fraudulently and without authority released $498,729 from the escrow account to be secretly used as **Ma's** down payment, in order to cause the fraudulent disbursement of Prosper Bank loan proceeds in the approximate amount of $1,835,571 to provide funds for borrower **Lina Ma** to purchase property, namely, a Laundromat, dba "Wash & Dry Laundry Mat", located at 500 Broadway Commons, Garland, Texas.

In violation of 18 U.S.C. §§ 1344 and 2.

Count Three
Bank Fraud, Aiding and Abetting
(Violations of 18 U.S.C. §§ 1344 and 2)

1.     The Grand Jury hereby adopts, realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 12 of Count One of this indictment.

2.     Beginning in or about November of 2007 and continuing thereafter through in or about April of 2008, in the Dallas Division of the Northern District of Texas, and elsewhere, defendants **Vathany Teng, Lina Ma**, and **Jerry Goh**, while acting as aiders and abetters to each other, did knowingly and intentionally devise and execute and attempt to devise and execute a scheme and artifice to defraud United Central Bank (UCB), of Garland, Texas, a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, and credits owned by and under the custody and control of UCB by means of false and fraudulent pretenses, representations, and promises.

**The Scheme and Artifice to Defraud United Central Bank (UCB)**

3.     It was a part of the scheme and artifice to defraud and to obtain moneys, funds, and credits of UCB by means of false and fraudulent pretenses, representations, and promises that the defendants **Teng, Ma,** and **Goh**, aided and abetted by each other, engaged in fraudulent conduct to deceive and defraud UCB in order to obtain loan approval for borrower **Lina Ma.**

4.     It was a part of the scheme and artifice to defraud for **Teng, Ma**, and **Goh**, to falsely represent to UCB that borrower **Ma** had sufficient funds to make the required equity injection (down payment) on the requested UCB loans.

5.     It was a part of the scheme and artifice to defraud for **Teng, Ma**, and **Goh**, to defraud and deceive UCB by falsely representing to UCB that **Ma** was the source of the down payment funds needed for **Ma's** UCB loans.

6.     It was a part of the scheme and artifice to defraud for **Goh** to demand in the summer of 2007 that **Teng** pay **Goh** $30,000 in return for his assistance getting fraudulent loans approved to borrower **Lina Ma**.  In March of 2008, **Teng** paid the agreed $30,000 to **Goh** as payment for his assistance to **Teng** in obtaining approval of loans from Prosper and UCB.  Thus, **Goh** clearly financially benefitted from his role in the fraudulent scheme to defraud United Central Bank.

7.     It was a part of the scheme and artifice to defraud for **Goh** to recruit investors who agreed to make short term loans to **Lina Ma**.  The total amount of loans solicited by **Goh** totaled over $449,000.  **Lina Ma** then used these borrowed funds for part of her loan down payments, and falsely represented to UCB that **Ma** was the actual source of these down payment funds.  **Goh, Teng** and **Ma** defrauded UCB by concealing from UCB that **Lina Ma** actually had to borrow the down payment funds from undisclosed investors.  **Goh** received a $6,663 broker fee for acting as a broker on the UCB loans.

8.     It was a part of the scheme and artifice to defraud for **Goh** to instruct the

investors to purchase cashiers checks and/or wire funds for the benefit of **Lina Ma**. **Goh** told the investors to list borrower **Lina Ma** as the "remitter" on any cashiers check purchased, thus falsely representing to UCB that borrower **Lina Ma** was the source of the funds used to purchase each cashiers check. This was all part of the scheme to conceal from UCB that the investors were the true source of the down payment funds.

9. It was a part of the scheme and artifice to defraud for conspirator **Vathany Teng** to use approximately $495,000 of her UCB seller loan proceeds to repay the short term investors. These investors had previously loaned funds to borrower **Ma** to provide the needed down payment funds. **Goh, Teng** and **Ma** defrauded UCB by concealing from UCB that **Vathany Teng** used the seller's loan proceeds to repay the investors, thus fraudulently and secretly using UCB loan proceeds to fund **Lina Ma's** UCB loan down payment.

10. It was a part of the scheme and artifice to defraud that on one UCB loan in the amount of $357,500, conspirators caused the escrow officer to falsely represent on Line 303 of the HUD-1 settlement statement (Funds from Borrower) that the $150,406 loan down payment was paid by the named borrower **Ma**.

11. It was a part of the scheme and artifice to defraud that on a second UCB loan in the amount of $975,000, conspirators caused the escrow officer to falsely represent on Line 303 of the HUD-1 settlement statement (Funds from Borrower) that $334,478 down payment was paid by the named borrower **Ma**.

**Execution of Scheme and Artifice to Defraud**

12.     On or about March 14, 2008,  defendants **Vathany Teng, Lina Ma,** and

**Jerry Goh**, while acting as aiders and abetters to each other, did knowingly and

intentionally devise and execute and attempt to devise and execute a scheme and artifice

to defraud United Central Bank, in that on or about this date, these defendants, while

acting as aiders and abetters to each other, caused United Central Bank, with offices in

Garland, Texas, to disburse loan proceeds obtained fraudulently in the approximate

amount of $975,000 to provide funds for borrower **Lina Ma** to purchase property,

namely, 31 lots in a town home subdivision in Irving, Texas.

In violation of 18 U.S.C. §§ 1344 and 2.

Count Four
Tampering with a Witness
(Violations of 18 U.S.C. § 1512(b)(3))

1.      The Grand Jury hereby adopts, realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 12 of Count One of this indictment.

2.      On or about October 19, 2010, in the Dallas Division of the Northern District of Texas, defendant **Jerry Goh**, knowingly corruptly persuaded, and knowingly attempted to corruptly persuade, and engaged in misleading conduct toward Vathany Teng, when **Goh** made several statements to Vathany Teng in an effort to persuade Teng to lie and withhold information if she was later interviewed by Federal Bureau of Investigation (FBI) investigators.  **Goh's** statements included the following:

Teng: "With United Central Bank, remember that's, I think that's the one you've been telling me.  You said we did something wrong.  I think the FBI is after all of us, we might go to jail, remember you said that?"

Goh: "No, I never said that."

Teng: "Yeah, you did."

Goh: "Well, if I said that, forget that I said that."

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
Goh: "I just wonder, wondering what you're going to say tomorrow."

Teng: "I just gonna tell them that whatever they ask will answer that.  If whatever they ask me."

Goh: "Don't be so dumb."

Teng: "Why?"

Goh: "If they ask you what you have for dinner, you say chicken or fish?"

Teng: "Tell them the truth what you eat."

Goh: "Sometimes you have to say I don't know."

Teng: "Well, I think be more up front is..."

Goh: "Okay, look. How did the fish get caught? It opened its mouth, that's how the fish got caught."

one or more of the above statements were made by defendant **Goh** with the intent to

hinder, delay and prevent Vathany Teng's communication to a law enforcement officer,

that is, an FBI agent, regarding any information Vathany Teng may have relating to the

commission and possible commission of a Federal offense.

In violation of 18 U.S.C. § 1512(b)(3).

## Forfeiture Notice
### [18 U.S.C. §§ 982(a)(2)(A)]

Upon conviction for any of the offenses alleged in Counts One through Three of this Indictment, the defendants, **Vathany Teng, Jerry Goh** and **Lina Ma**, shall forfeit to the United States of America, pursuant to 18 U.S.C. §§ 982(a)(2)(A), any property, real or personal, constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the respective offense.  This property includes, but is not limited to, the following:

1.  The total amount of proceeds obtained, directly or indirectly, as a result of the offense, in the form of a personal money judgment.
    [sought from each defendant concerning Counts One, Two, and Three].

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-referenced property subject to forfeiture, as a result of any act or omission of a defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States of America to seek forfeiture of any other property of that defendant up to the value of the above-described property subject to forfeiture.

A TRUE BILL

_____
FOREPERSON


JAMES T. JACKS
UNITED STATES ATTORNEY

_____
DAVID L. JARVIS
Assistant United States Attorney
Texas Bar No. 10585500
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8729
Facsimile: 214.767.4104
david.jarvis@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

VS.

VATHANY TENG(01)
LINA MA (02)
JERRY GOH (3)

**3-11CR-212-N**

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1344)
Conspiracy to Commit Bank Fraud

18 U.S.C. §§ 1344 and 2
Bank Fraud, Aiding and Abetting

18 U.S.C. § 1512 (b)(2)(A)
Tampering with a Witness

18 U.S.C. §§ 982(a)(2); 981(a)(1)(C) and 28 U.S.C. §2461
Forfeiture Notice

( 4  Counts )

A true bill rendered,

_____
                                          FOREPERSON

DALLAS
Filed in open court this _19_ day of ___July___, A.D. 2011

-------------------------------------------------------------------
                                                            Clerk
**WARRANT TO ISSUE** FOR JERRY GOH-----------------------------------
**NO WARRANT TO ISSUE** FOR VATHANY TENG AND LINA MA-----------------

_____
UNITED STATES ~~DISTRICT~~ JUDGE          7/19/11
NO PENDING  CRIMINAL COMPLAINT

MAGISTRATE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| Related Case Information |
|---|
| Superseding Indictment: ☐ Yes ☒ No New Defendant: ☒ Yes ☐ No |
| Pending CR Case in NDTX: ☐ Yes ☒ No If Yes, number: _____ |
| Search Warrant Case Number _____ |
| R 20 from District of _____ |
| Magistrate Case Number _____ |

1. **Defendant Information**

   Juvenile: ☐ Yes ☒ No

   If Yes, Matter to be sealed:

   ☐ Yes ☒ No

   Defendant Name    VATHANY TENG (01)

   Alias Name    _____

   Address    _____

   **3 - 1 1 C R - 2 1 2 - N**

   County in which offense was committed:    DALLAS

2. **U.S. Attorney Information**

   DAVID L. JARVIS    TX Bar No. 10585500

3. **Interpreter**

   ☐ Yes ☒ No    If Yes, list language and/or dialect:_____

4. **Location Status**

   NO ARREST WARRANT TO ISSUE

   ☐ Already in Federal Custody as of _____
   ☐ Already in State Custody
   ☐ On Pretrial Release

   RECEIVED
   JUL 1 9 2011
   CLERK, U.S. DISTICT COURT
   NORTHERN DISTRICT OF TEXAS

5. **U.S.C. Citations**

   Total # of Counts as to This Defendant: _____3_____    ☐ Petty ☐ Misdemeanor ☒ Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 USC § 1349 (18 USC § 1344) | Conspiracy to Commit Bank Fraud | 1 |
| 18 USC §§ 1344 and2) | Bank Fraud, Aiding and Abetting | 2-3 |
| 18 USC §§ 982(a)(2); 981(a)(1)(C); | Forfeiture Notice | |
| 28 USC § 2461 | | |

Date    7-19-11

Signature of AUSA: _____
David L. Jarvis

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| Related Case Information |
|---|
| Superseding Indictment:   Yes  X  No    New Defendant:  X  Yes    No |
| Pending CR Case in NDTX:   Yes   X  No  If Yes, number: _____ |
| Search Warrant Case Number _____ |
| R 20 from District of _____ |
| Magistrate Case Number _____ |

1. **Defendant Information**

   Juvenile:   Yes   X  No

   If Yes, Matter to be sealed:

   Yes   X   No

   Defendant Name    LINA MA (02)

   Alias Name

   Address         **3 - 11 CR - 212 - N**

   County in which offense was committed:    DALLAS

2. **U.S. Attorney Information**

   DAVID L. JARVIS                    TX Bar No. 10585500

3. **Interpreter**

   Yes   X   No    If Yes, list language and/or dialect:_____

4. **Location Status**

   NO ARREST WARRANT TO ISSUE

   ___ Already in Federal Custody as of _____
   ___ Already in State Custody
   ___ On Pretrial Release

   RECEIVED
   JUL 1 9 2011
   CLERK, U.S. DISTRICT COURT
   NORTHERN DISTRICT OF TEXAS

5. **U.S.C. Citations**

   Total # of Counts as to This Defendant: _____3_____    ___ Petty   ___ Misdemeanor   X  Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 USC § 1349 (18 USC § 1344) | Conspiracy to Commit Bank Fraud | 1 |
| 18 USC §§ 1344 and2) | Bank Fraud, Aiding and Abetting | 2-3 |
| 18 USC §§ 982(a)(2); 981(a)(1)(C); | Forfeiture Notice | |
| 28 USC § 2461 | | |

Date  7-19-11          Signature of AUSA: _____

                         David L. Jarvis

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| | **Related Case Information** |

Superseding Indictment:    Yes  X  No    New Defendant:  X  Yes ☐ No

Pending CR Case in NDTX:    Yes    X  No   If Yes, number: _____

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number _____

**1.    Defendant Information**

Juvenile:     Yes   X   No

If Yes, Matter to be sealed:

Yes    X    No

Defendant Name    JERRY GOH (03)

Alias Name    _____

Address    **3 - 1 1 C R - 2 1 2 - N**

County in which offense was committed:    DALLAS

**2.    U.S. Attorney Information**

DAVID L. JARVIS    TX Bar No. 10585500

**3.    Interpreter**

Yes    X    No    If Yes, list language and/or dialect: _____

RECEIVED
JUL 19 2011
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**4.    Location Status**

**ARREST WARRANT TO ISSUE**

___ Already in Federal Custody as of _____
___ Already in State Custody
___ On Pretrial Release

**5.    U.S.C. Citations**

Total # of Counts as to This Defendant: _____4_____    ☐ Petty    ☐ Misdemeanor    X Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 USC § 1349 (18 USC § 1344) | Conspiracy to Commit Bank Fraud | 1 |
| 18 USC §§ 1344 and2) | Bank Fraud, Aiding and Abetting | 2-3 |
| 18 USC § 1512 (b)(2)(A) | Tampering with a Witness | 4 |
| 18 USC §§ 982(a)(2); 981(a)(1)(C); | Forfeiture Notice | |
| 28 USC § 2461 | | |

Date    7/19/11    Signature of AUSA: _____

David L. Jarvis